

**ORDERED in the Southern District of Florida on June 16, 2015.**

Erik P. Kimball, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                              CASE NO.: 11-39616-EPK

DANIEL W. MCCRAVY                                CHAPTER 7

Debtors.
_____/

PETROLEUM REALTY I, LLC,
PETROLEUM REALTY II, LLC,
PETROLEUM REALTY V, LLC,

Plaintiffs,

v.                                                                   ADV. NO.: 13-01639-EPK

DANIEL W. MCCRAVY,

Defendant.
_____/

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court upon the *Plaintiff's Motion for Summary*

1

*Judgment* (the "Motion") [ECF No. 137], the *Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment* [ECF No. 168] (the "Response"), and the *Plaintiffs' Reply to McCravy's Response to Plaintiffs' Motion for Summary Judgment* [ECF No. 180] (the "Reply"). The Court has considered the Motion, the Response, the Reply, the record in this adversary proceeding, and the record in the underlying chapter 7 case, number 11-39616-EPK. For the reasons stated more fully below, the Court grants the Motion [ECF No. 137] in part. The Court will conduct trial in this adversary proceeding solely to accept evidence with regard to the value of the transferred contracts.

**STATEMENT OF FACTS**

In this adversary proceeding, Petroleum Realty I, LLC, Petroleum Realty II, LLC, and Petroleum Realty V, LLC (collectively, "PRIP") allege that Daniel W. McCravy willfully and maliciously injured PRIP by actively impeding PRIP's attempts at collection on a judgment. The following are material facts not subject to genuine dispute.

**Litigation to Partial Judgment**

Beginning in 2000, PRIP leased several gasoline service station and convenience store properties to a number of entities. *Joint Stipulation of Facts Regarding Plaintiff's Motion for Summary Judgment [ECF No. 137]*, ECF No. 164 (the "Stipulation"), at ¶¶1-6. Ultimately, relations between the parties soured and, in 2004, PRIP filed a lawsuit in the Circuit Court in and for Palm Beach County, Florida, Case No. 502004CA005889XXXXMB AD (the "First Florida Action"). Stipulation at ¶7. In 2006, PRIP obtained a partial, non-final judgment (the "2006 Judgment") against the defendants in the First Florida Action in the amount of some $14 million. Stipulation at ¶8.

The defendants to the First Florida Action included USAG Petro, LLC ("USAG

2

Petro"), a Florida limited liability company. Stipulation at ¶¶3, 8. USAG Petro was owned by two corporate entities: USAG Gas Corp. ("USAG Gas") and Reb Oil & Gas, Inc. ("Reb Oil"). Stipulation at ¶4. USAG Gas was wholly owned by Ali M. Jaferi, also a defendant in the First Florida Action. *Id.* Reb Oil was a Florida Corporation wholly owned by Mr. McCravy. Stipulation at ¶2; *Defendant, Daniel W. McCravy, III's Amended Answer and Affirmative Defenses to Third Amended Complaint*, ECF No. 163 (the "Answer") at ¶12.

**The Fuel Supply Contracts**

At the time of the 2006 Judgment, USAG Petro and its affiliates were parties to 54 fuel supply contracts (the "Fuel Supply Contracts") with gasoline service station operators. Answer at ¶6. The transfer of the Fuel Supply Contracts is the primary focus of the complaint here. Mr. McCravy asserts that USAG Petro was the "original named seller" to only 13 of the Fuel Supply Contracts and thereby attempts to deflect PRIP's focus on the value of all 54 contracts. Response, Exh. A (the "McCravy Affidavit") at ¶¶26-30. By Mr. McCravy's admission, USAG Petro was at least "a party to" all 54 Fuel Supply Contracts. Answer at ¶6. While it is unclear what exactly Mr. McCravy means, it is undisputed that the cash collected as a result of the Fuel Supply Contracts flowed into USAG Petro's accounts. *Plaintiffs' Notice of Filing Transcript of Deposition of Tim Lennon Conducted on January 15, 2015, in Support of Plaintiffs' Motion for Summary Judgment filed on February 2, 2015*, ECF No. 134 (the "First Lennon Depo."), 62 (testimony of comptroller).[1] It is also undisputed that as part of the transaction outlined below USAG Petro became the owner of all 54 Fuel Supply Contracts prior to their transfer to another entity controlled by Mr. McCravy. *Plaintiffs' Notice of Filing Transcript of Deposition of Daniel W. McCravy, III*

---

[1] Deposition citations are to the internal page numbers on deposition transcripts as attached to the referenced court filing.

3

*Conducted on January 9, 2015, in Support of Plaintiffs' Motion for Summary Judgment*, ECF No. 133 (the "McCravy Depo."), Exh. 1 (the "Master Agreement"), 2H (sub-agreement entitled "Assignment and Assumption Agreement (Contracts)").[2]  In the end, Mr. McCravy through his wholly-owned entities contemplated purchasing, and ultimately did purchase, all 54 Fuel Supply Contracts via USAG Petro. *Id.* at ¶36; Master Agreement.

In October 2006, Mr. McCravy, in his capacity as President of USAG Petro, contracted with Meridian Associates, Inc. to determine the value of all 54 of the Fuel Supply Contracts.  Answer at ¶31.  Meridian Associates, Inc. advised Mr. McCravy that the value of the Fuel Supply Contracts was between $4,525,000 and $6,240,000.  *Third Amended Complaint*, ECF No. 84 (the "Complaint"), Exh. B (the "Valuation Letter"); Answer at ¶32.

Mr. McCravy, in his capacity as an officer of Reb Oil, sent the Valuation Letter to Alphonse M. Alfano, Esq., requesting an adjustment of the valuation based on USAG Petro's litigation risks.  Complaint, Exh. C (the "Law Firm Letter"); Answer at ¶33.  Mr. Alfano informed Mr. McCravy of the 2006 Judgment, pending appeals, and attendant risks. Law Firm Letter.  In particular, Mr. Alfano informed Mr. McCravy that the value of the Fuel Supply Contracts should be considered greatly reduced because USAG Petro was facing eviction from its service stations by PRIP.  *Id.*  Eviction would result in the loss of 27 of the 54 Fuel Supply Contracts and an attendant diminution of profitability.  *Id.* Furthermore, Mr. Alfano informed Mr. McCravy that if Reb Oil were to purchase the Fuel Supply Contracts from USAG Petro, the former would be considered "a legal successor in

---

[2] The Master Agreement has been filed at several locations on the docket, with varying internal markers.  The most comprehensive internal markers are found on the copy attached as an exhibit to ECF No. 133, and identify the agreement as "Exhibit 2," "2A," "2B," etc. The Court cites to this docket entry and markers.

4

interest to USAG under Georgia law, and thus responsible for USAG's obligations." *Id.*

**The Master Agreement**

As of June 2007, the 2006 Judgment debtors had not paid the judgment. *See* Complaint, Exh. E (final judgment). In addition, the judgment debtors had failed to fulfill several other legal obligations imposed directly by the court in the First Florida Action and under the terms of a partial settlement with PRIP. *See id.* As a result, on June 25, 2007, PRIP moved for entry of a final judgment. *See id.*

On June 30, 2007, five days after PRIP sought entry of final judgment against all defendants in the First Florida Action (including USAG Petro), Mr. McCravy, Ali Jaferi, and several entities controlled by them, executed a contract providing for transfer of a variety of assets and equity. Master Agreement. Under the terms of the Master Agreement, Mr. Jaferi caused his companies to transfer their interests in the Fuel Supply Contracts to USAG Petro. *Id.* at 2H. Mr. Jaferi sold his 50% interest in USAG Petro back to the entity itself in exchange for forgiveness of an alleged debt of $958,320.36 owed by Mr. Jaferi. Master Agreement at ¶4.C. Then, USAG Petro transferred all 54 of the Fuel Supply Contracts, along with substantially all of USAG Petro's assets, to Reb of Florida, Inc. ("Reb of Florida") in exchange for a promissory note in the amount of $1,916,640. *Id.* at ¶4.B.

Reb of Florida was a Florida corporation wholly owned by Mr. McCravy. Response, Exh. A (the "McCravy Affidavit") at ¶16. The promissory note given to USAG Petro in exchange for the Fuel Supply Contracts was due and payable in its entirety on December 31, 2012. Master Agreement at Exh. 2, ¶4.B. The Master Agreement expressly stated that Reb of Florida would not assume any debts, obligations, or liabilities of USAG Petro as a result of the sale. *Id.*

5

In simple terms, the Master Agreement had three important effects: (1) it severed relations between Mr. McCravy and Mr. Jaferi and their respective entities; (2) it transferred all of the Fuel Supply Contracts to Mr. McCravy's company, Reb of Florida; and (3) it left USAG Petro, then wholly-owned by Mr. McCravy, with no assets except the $1.9 million promissory note made by Reb of Florida. As Mr. McCravy was aware, all of the Fuel Supply Contracts were due to expire by 2011. McCravy Depo. at 83-84. Without the ability to generate revenue, Reb of Florida would be rendered insolvent prior to the date it would be required to make payment on the $1.9 million note to USAG Petro. *See id.*

USAG Petro and Reb of Florida did not negotiate the principal amount of the promissory note or its interest rate. McCravy Depo. at 86; *Plaintiffs' Notice of Filing Transcript of Deposition of Alphonse Alfano Conducted on December 17, 2014, in Support of Plaintiffs' Motion for Summary Judgment*, ECF No. 131 (the "Alfano Depo."), 60. Rather, Mr. McCravy unilaterally designated the amount of the promissory note. *See* McCravy Depo. at 86-87; Alfano Depo. at 60. At the time of the signing of the Master Agreement, Mr. McCravy was aware of PRIP's judgment against USAG Petro. McCravy Depo. at 85.

**Value of Assets Transferred**

PRIP has not presented evidence of the value of the Fuel Supply Contracts at the time of their transfer under the Master Agreement. Although PRIP refers to the Valuation Letter in the Motion, neither Meridian Associates, Inc. nor its personnel are offered to this Court as expert witnesses. Furthermore, the Valuation Letter provides an estimate as to the value of the Fuel Supply Contracts in 2006, a year prior to the transfer.

Likewise, Mr. McCravy has not presented competent evidence of value of the 54 Fuel Supply Contracts transferred to REB of Florida. Attached to the Response, Mr. McCravy

filed expert testimony of John Sartory regarding the value of only eight of the contracts. Response, Exh. C. Mr. Sartory valued these contracts at between $0 and $320,000 based on two different assessments of litigation risk. *Id.* PRIP objected both to Mr. Sartory's qualifications and to his methods of valuation. *Plaintiffs' Daubert Motion to Exclude the Testimony and Report of John Sartory, Incorporated Memorandum of Law, and Request for Daubert Hearing*, ECF No. 190 (the "Motion to Exclude"). At a hearing on the Motion to Exclude on May 21, 2015, the Court determined to deny the Motion to Exclude. However, the Court noted that the Sartory testimony provides at best an incomplete valuation of the Fuel Supply Contracts because, among other reasons, it fails to adequately explain why only eight contracts were valued.

Accordingly, as the parties conceded at a status conference on the Motion on May 21, 2015, there is no evidence offered by either party that would provide a value for all of the Fuel Supply Contracts at the time of the transfer in 2007. This is a material fact subject to genuine dispute, requiring trial.

**The Lis Pendens**

In December 2006, USAG Petro paid the law firm of Morris, Manning & Martin LLP ("Morris Manning") to prepare and record *lis pendens* on 38 properties owned by PRIP. *See* McCravy Depo. at 14-26. At that time, USAG Petro had no legitimate claim relating to the properties. *Id.* at 15. USAG Petro continued to pay legal fees to maintain the *lis pendens* until after the execution of the Master Agreement. *Id.* Thereafter, Reb of Florida paid Morris Manning. *See id.* at 14-20, 42-48, 74-77.

PRIP successfully challenged the *lis pendens* as invalid. *See Boca Petroco, Inc. et al. v. Petroleum Realty II, LLC et al.*, 285 Ga. 487 (Ga. 2009). Entities wholly owned and

7

controlled by Mr. McCravy, however, paid Morris Manning to maintain the *lis pendens* for nearly two years, from the execution of the Master Agreement in July 2007 until the Supreme Court of Georgia declared them invalid in June 2009. *See id.*; McCravy Depo. at 14-20, 42-48, 74-77. Neither Mr. McCravy nor his entities were under any obligation to any party to maintain the *lis pendens*. McCravy Depo. at 74-77.[3] Mr. McCravy knew that the *lis pendens* impeded PRIP's exercise of its right to sell the subject properties. *Id.* at 23.[4]

**Further Litigation**

As of mid-2009, PRIP was still unable to collect on its outstanding judgment against USAG Petro and related entities, which then totaled over $17 million. *See* Complaint, Exh. E; *Petroleum Realty I, LLC et al. v. REB of Fla., Inc. et al.*, Case No. 502004CA005889XXXXMB AD, ECF No. 1. Accordingly, PRIP filed a complaint in proceedings supplementary to execution in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Second Florida Action"). Complaint, Exhs. H-J (Second Florida Action documents entered on the docket in this case).[5] In the complaint filed in the Second Florida Action, PRIP named as defendants Mr. McCravy, Reb of Florida, Reb Oil, and Diabes Gas Holdings Atlanta, LLC, an entity owned by Mr. McCravy. *Id.* In the Second Florida Action, among other things, PRIP sought to recover assets transferred

---

[3] Mr. McCravy has testified that he believes he had a contractual obligation to pay legal fees to Morris Manning for maintenance of the *lis pendens* and for other legal activities. Yet Mr. McCravy provides no explanation at all for this belief. It is apparent that the *lis pendens* were instituted and maintained for the sole purpose of hindering the legitimate commercial efforts of PRIP.
[4] Mr. McCravy claimed at deposition that he believed that the *lis pendens* did not actually hinder PRIP's attempts to sell the properties, because he knew that eventually some properties were sold. McCravy Depo. at 24. His statements do not, however, contradict prior testimony affirming his knowledge that the *lis pendens* were, at one time, "preventing [PRIP] from exercising its rights to sell its property." McCravy Depo. at 23 (publishing prior deposition testimony). There is thus no genuine dispute as to Mr. McCravy's knowledge regarding the obvious effect of the *lis pendens*.
[5] Evidence from the Second Florida Action is hereinafter cited by reference to docket entries in the above-captioned bankruptcy case.

8

as a result of the Master Agreement.  As part of the relief requested, PRIP sought to pierce the corporate veils of the McCravy entities to hold Mr. McCravy individually liable.  *Id.*  The state court granted PRIP leave to amend its complaint, finding a reasonable basis for PRIP to recover punitive damages.  Complaint, Exh. H-1.  The basis for relief requested in the Second Florida Action is substantially similar to the claim presented in this adversary proceeding.

Mr. McCravy and the corporate defendants to the Second Florida Action intentionally delayed the proceedings.  In 2011, following repeated disregard of discovery rules and court orders, PRIP moved to strike the defendants' pleadings and require the defendants to pay reasonable fees necessitated by discovery disputes.  Complaint, Exhs. I-J.  After reviewing PRIP's motions, a Special Master reported that Mr. McCravy and his companies "deliberately and contumaciously disregarded the Court's Orders, the discovery rules, and materially delayed these proceedings."  *Id.*  The presiding judge overruled the defendants' exceptions to the Special Master Report and adopted the Special Master's report in its entirety.  *Id.*  The state court thereafter entered a partial final judgment in favor of PRIP in the amount of $137,916.80, setting a deadline of October 13, 2011 for payment.  *Id.* at Exh. K.

When the defendants in the Second Florida Action failed to pay the court-ordered sanctions, PRIP moved for additional sanctions and entry of default judgment against Mr. McCravy on all counts of the amended complaint.  Complaint, Exh. L.  On October 19, 2011, the Special Master issued a second report finding the defendants at fault and recommending the requested relief.  *Id.*  One week later, Mr. McCravy, Reb of Florida, and Reb Oil stayed the Second Florida Action by filing bankruptcy petitions with this Court.

PRIP later filed claim no. 20-1, containing allegations similar to those in the Second Florida Action, and including the sanctions awarded by the state court.

### Mr. McCravy's Role in Directing Entities

As previously noted, Mr. McCravy was the sole owner of Reb Oil, Reb of Florida, and, following the transactions contemplated by the Master Agreement, USAG Petro (Reb Oil, Reb of Florida and USAG Petro, collectively, the "McCravy Entities"). Mr. McCravy operated Reb Oil and Reb of Florida as their chief executive at all relevant times. He acted as president of USAG Petro during the relevant period between the 2006 Judgment and the execution of the Master Agreement, and then became sole owner and chief executive of USAG Petro.

Mr. McCravy did not negotiate transfers of assets between the McCravy Entities. *See* First Lennon Depo. at 61-65, 88-89. Rather, he assigned arbitrary values to the entities' assets and transferred them according to his personal desire. *See id.*

Mr. McCravy regularly used the funds of the McCravy Entities for his own purposes. While the McCravy Entities maintained separate bank accounts, Mr. McCravy frequently transferred cash among those accounts. First Lennon Depo. at 29, 61, 89. The comptroller for the McCravy Entities suggests that cash was merely borrowed or repaid between the entities in order to assure payment of bills. *Id.* at 88-89. Yet formal record keeping does not negate the fact that cash was treated as a fungible commodity and used as Mr. McCravy saw fit.[6] For example, Mr. McCravy transferred hundreds of thousands of dollars

---

[6] The comptroller for the McCravy Entities maintained two different accounting programs to track the entities' finances. One program, Quickbooks, tracked the cash flow of the combined entities on a daily basis. *Id.* at 30; *Plaintiffs' Notice of Filing Regarding April 13, 2015 Re-Deposition of Tim Lennon*, ECF No. 204 (the "Second Lennon Depo."), 31. Another program, PAMS, tracked the finances of each McCravy Entity. First Lennon Depo. at 32, 49.

from USAG Petro to Reb of Florida even prior to the execution of the Master Agreement and so before he had formal control of USAG Petro. *Id.* at 65. There is no evidence that such funds were ever repaid, nor was repayment contemplated in the Master Agreement.

There is some dispute as to whether certain funds of the McCravy Entities seemingly used for Mr. McCravy's personal expenses were instead actual business expenses. *Compare* First Lennon Depo. at 68, Second Lennon Depo. at 45-49 *with* First Lennon Depo. at 75-85. At a minimum, however, the McCravy Entities paid for certain non-business clothing and grooming expenses incurred by Mr. McCravy. *Id.* at 79-81. Taken as a whole, the evidence now before the Court shows that Mr. McCravy treated the liquid assets of the McCravy Entities as a pool of cash and that he directed its use for the purposes most advantageous to him personally.

## ANALYSIS

Federal Rule of Civil Procedure 56, made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the Court determines that the "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant supports its assertion that a fact cannot be disputed by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of meeting this standard. *Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006). "An issue of fact is 'material' if it is a legal element of the

11

claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *In re Pony Express Delivery Services, Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006).

PRIP seeks to except from discharge under section 523(a)(6) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, a claim arising from willful and malicious injury to PRIP. PRIP alleges that, following entry of judgment against his entities by Florida courts, Mr. McCravy unjustly enriched himself at PRIP's expense in three ways: (1) by causing assets to be transferred among entities controlled by him so as to leave a judgment debtor entity unable to pay, (2) by maintaining *lis pendens* on PRIP's property without legal or factual basis to do so in an effort to stymie PRIP's valid commercial efforts, and (3) by deliberately and contumaciously disregarding court orders in order to delay and frustrate PRIP's attempts to collect on its judgment. The debt in question is equal to the value of the assets transferred together with the attorney's fees and costs awarded to PRIP in the Second Florida Action.

**Veil Piercing**

Mr. McCravy is the sole defendant in this case. PRIP alleges that Mr. McCravy employed the McCravy Entities as his *alter egos*, and that he is thus liable for their actions. Accordingly, in order to succeed in its complaint under section 523, PRIP must first pierce the corporate veil of those entities.

Under Florida law, a plaintiff seeking to pierce the corporate veil must satisfy a three-prong test, showing that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (citing *Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (Fla. 3d. Dist. Ct. App. 2008).

To satisfy the first prong, Florida courts look to see whether the owner and his corporate form operated as a "single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them." *In re Hillsborough Holdings Corp.,* 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994)). In other words, "[u]nder the basic alter ego theory (confusion of identities), the personal affairs of the shareholder become confused with the business affairs of the corporation." *Solomon v. Betras Plastics, Inc.,* 550 So.2d 1182, 1184 (Fla. 5th Dist. Ct. App. 1989).

There is no doubt that Mr. McCravy dominated the affairs of the McCravy Entities such that they operated as his *alter egos*. Beginning with the 2006 Judgment, Mr. McCravy's actions directing the McCravy Entities appear as a coordinated defense against PRIP. Mr. McCravy repeatedly transferred funds among the McCravy Entities to pay the bills of his collective array in a manner designed to benefit him personally. His deployment of corporate funds for personal expenses was, in light of the evidence as a whole, indicative of his treatment of the conglomerate as his personal piggy bank. There was no intention to govern the finances or operations of the McCravy Entities in a manner materially distinct from Mr. McCravy's person.

Mr. McCravy's dominance of the McCravy Entities is inextricable from his

13

treatment of PRIP.  Mr. McCravy used funds generated by the McCravy Entities to maintain *lis pendens* on PRIP property without legal basis.  He orchestrated the transfer of assets from PRIP's judgment debtor to a separate legal entity, leaving the judgment debtor with only a valueless promissory note and therefore unable to pay the judgment.

The circumstances of this case are nearly identical to those of *Allied Chemical Corp v. Randall*, a foundational case in *alter ego* theory, in which the 7th Circuit stated the facts and opined thus:

> After acquiring control of Aerosol, [defendant] Gilbert caused all of Aerosol's current liabilities to be discharged, with the exception of the amount he knew was carried on Aerosol's books as being due [plaintiff] Allied. Gilbert then proceeded, while Aerosol was insolvent, to render Aerosol unable to satisfy Allied's claim by causing the sale of Aerosol's inventory to [Gilbert's wholly owned entity] Ever-Ready, causing the promissory notes to be paid to [Gilbert's other wholly owned entity] Presto and causing Ever-Ready to charge arbitrary and unreasonable amounts for services purportedly rendered for Aerosol.
> The circumstances of this case require that the corporate entities of Gilbert's corporations be disregarded, for they did not exist apart from Gilbert's will. The corporations were treated as different parts of one operation. To recognize the corporate entities when in fact they were but the alter ego of Gilbert would promote injustice.

321 F.2d 320, 323 (7th Cir. 1963).  Replace a few names, and the facts are substantially identical to those at hand.  Like Mr. Gilbert, Mr. McCravy operated his companies as a single economic entity.  As in *Randall*, it would be inequitable for this Court to uphold a legal distinction between Mr. McCravy and the McCravy Entities.  *Cf. In re Jennings*, 670 F.3d 1329, 1333-34 (11th Cir. 2012) (similar facts); *In re Bammer*, 131 F.3d 788, 792-93 (9th Cir. 1997) (en banc) (transfer of asset from judgment debtor to family member resulting in § 523 liability).

Based on the evidence now before the Court, PRIP also satisfies the second and third

14

prongs of the veil piercing standard. The Master Agreement removed the valuable assets of the judgment debtor, USAG Petro, replacing them with an uncollectable promissory note. Mr. McCravy then maintained *lis pendens* on PRIP property without legal basis, with full knowledge that he was impeding PRIP's legal rights. These actions satisfy the "improper purpose" requirement of the second prong. Likewise, such actions inarguably harmed PRIP, rendering it unable to collect on its debts and sell property from which it could have recovered, satisfying the third and final prong of the veil piercing standard.

PRIP has met its burden under Florida's veil piercing law. Accordingly, the Court holds Mr. McCravy liable for the actions of USAG Petro, Reb Oil, and Reb of Florida.

### Existence of Debt

A discharge under section 727 "does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). There are two general components of this provision. There must be a debt owing from the debtor to the plaintiff, and that debt must arise from willful and malicious injury.

The debt alleged here is presented as part of PRIP's claim no. 20-1 filed in the above-captioned main bankruptcy case. PRIP requests under section 523(a)(6) a finding of non-dischargeability in the amount of the value transferred by the Master Agreement in violation of Florida Statutes § 726.105. *See also* FS §§ 726.108-09 (rendering fraudulent transfers voidable and/or allowing recovery of judgment by plaintiff creditor in amount of transferred assets). Section 726.105(1) states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

15

      (a)   With actual intent to hinder, delay, or defraud any creditor of the debtor . . .

Florida Statute § 726.109(2) provides that "the creditor may recover judgment for the value of the asset transferred" once it has proven allegations under relevant portions of the chapter, including § 105.

      Subsection 726.105(2) provides a list of factors, known as the badges of fraud, that the Court may consider in determining whether a defendant acted with actual intent. Mr. McCravy's actions present a veritable laundry list of badges of fraud. The transfer was from the judgment debtor, USAG Petro, to an insider. Mr. McCravy retained indirect possession and control of the assets after the transfer. USAG Petro was sued before the transfer and faced a large judgment. The transfer was of substantially all of USAG Petro's assets. Mr. McCravy thus removed assets from the reach of creditors. The value of the consideration given for the transferred assets was not reasonably equivalent. USAG Petro became effectively insolvent as a result of the transfer. The transfer occurred shortly after the 2006 Judgment and shortly before that judgment was to become final. These facts clearly indicate that Mr. McCravy acted intentionally to defraud PRIP.

      With the Master Agreement that Mr. McCravy orchestrated among his *alter ego* entities, Mr. McCravy accomplished the transfer of significant assets with actual intent to hinder and delay PRIP in the collection of its judgment. Accordingly, a debt exists pursuant to Florida Statutes §§ 726.105(1)(a) and 725.109(2) in an amount equal to the value of the assets transferred from and through USAG Petro to Reb of Florida under the Master Agreement. PRIP asks that this debt be excepted from discharge under section 523(a)(6). As previously noted, the value of the assets transferred is subject to genuine dispute, and so the amount of the debt to be excepted from discharge can be determined

16

only after trial.

A further debt exists in the form of a judgment for sanctions in the Second Florida Action. The state court found that Mr. McCravy had deliberately and contumaciously disregarded the court's orders and delayed the proceedings. The court thus sanctioned Mr. McCravy in the amount of $137,916.80. PRIP asks that this debt also be excepted from discharge under section 523(a)(6).

### Willful and Malicious

This Court has issued several decisions analyzing the "willful and malicious" standard in section 523(a)(6). *See Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane)*, 470 B.R. 902 (Bankr. S.D. Fla. 2012), *aff'd*, 485 B.R. 460 (S. Dist. Fla. 2013), *aff'd*, 755 F.3d 1285 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 718 (2014); *Drewes v. Levin (In re Levin)*, 434 B.R. 910 (Bankr. S.D. Fla. 2010). The Court incorporates here the detailed discussion of the statutory phrase "willful and malicious" from the *Kane* decision. 470 B.R. at 939–43. In short, an act is willful within the meaning of section 523(a)(6) if it is undertaken with the intent to cause injury, or if it is an intentional act and injury is certain or substantially certain to result. With financial harms, such as those at issue in this case, it must be shown that the defendant actually knew, at the time of the intentional act, that injury was substantially certain to result. An act is "malicious" within the meaning of section 523(a)(6) if it is wrongful and without just cause, or excessive even where there is no ill will.

There is no genuine dispute of material fact that Mr. McCravy orchestrated the Master Agreement, the *lis pendens* filings, and the violations of court orders relating to the Second Florida Action. It is obvious that Mr. McCravy acted with the actual, present intent

17

to cause harm to PRIP by preventing PRIP from collecting on its judgment. He literally stole away the assets that could be used for that purpose and secreted them for himself. In addition, Mr. McCravy acted intentionally with present knowledge that his actions would harm PRIP by leaving PRIP with no ability to collect. Mr. McCravy's actions were wrongful and there is no evidence that there was just cause. Accordingly, PRIP has met its burden under section 523(a)(6).

### Affirmative Defenses

Mr. McCravy has offered five affirmative defenses. Answer at 11-12. Of these, the Court, on motion from PRIP, struck the first, second, fourth, and fifth. *Id.*; *Order Granting, in Part, and Denying, in Part, Plaintiffs' Motion to Strike Defendant's Affirmative Defenses*, ECF No. 157. Thus, the Court addresses the third affirmative defense.

In his third affirmative defense, Mr. McCravy states that the $1.9 million promissory note given by Reb of Florida to USAG Petro as consideration for the Fuel Supply Contracts and other assets constituted reasonably equivalent value. To this end, Mr. McCravy cites Florida Statutes § 726.109(1). Section 726.109(1) reads, in its entirety, "A transfer or obligation is not voidable under § 726.105(1)(a) against a person *who took in good faith* and for a reasonably equivalent value or against any subsequent transferee or obligee." Emphasis added.

As discussed more fully above, the McCravy Entities, acting in concert as Mr. McCravy's *alter egos*, orchestrated the transfer of the Fuel Supply Contracts for the obvious purpose of denying PRIP access to their value. The promissory note was not collectable, and thus worthless. Mr. McCravy and his entities did not act in good faith. The good faith defense of section 726.105(1)(a) does not apply.

**CONCLUSION**

For the reasons stated above, and being otherwise fully advised in the premises, it is ORDERED and ADJUDGED that:

1. The Motion [ECF No. 137] is GRANTED IN PART to the extent provided herein.

2. The Court will hold a trial in this adversary proceeding solely on the issue of the value of the Fuel Supply Contracts on June 30, 2007, the date of transfer under the Master Agreement.

3. Counsel for the parties shall attend a status conference on **July 9, 2015** at **9:30 a.m.** at the United States Bankruptcy Court, The Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401 for the purpose of setting this matter for trial.

###

Copies Furnished To:

Ashley Dillman Bruce, Esq.

Ashley Dillman Bruce, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service with the Court.